UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


TIM MCGEE, ) CASE NO. 3:09 CV 2799
)
    Plaintiff, ) JUDGE DAVID A. KATZ
)
v. )
) OPINION AND ORDER
PAUL MOON, et al., )
)
    Defendants. )


On December 2, 2000, pro se plaintiff Tim McGee filed the above-captioned action against Ottawa County Court of Common Pleas Judge Paul Moon, the law firm of Javitch, Block & Rathbone, the law firm of Weltman, Weinberg & Reis, the law firm of Thomas & Thomas, the law firm Wolpoff and Abramson, HSBC Bank, Citibank South Dakota, Citibank Nevada, Discover Bank, MBNA Bank, attorney Victor Javitch, attorney Brian C. Block, attorney Marc Silberman, attorney Scott Russo Miller, attorney James Oh, and attorney Melissa Hager Morris. In the complaint, plaintiff asserts claims under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. 1961, and the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1601. He asks this court to vacate the judgments of the Ottawa Court of Common Pleas, conduct a new jury trial on the case, instruct the jury that the defendants subjected

him to intentional infliction of emotional distress, enjoin all of the defendants' debt collection efforts, and award him damages.

**Background**

Mr. McGee was the defendant in multiple debt collection actions filed in the Ottawa County Court of Common Pleas in 2005 and 2006. He filed counterclaims and defended each of these actions. Nevertheless, judgments were rendered against him in all of the cases. He now contests those judgments, asserting they are void.

The first of the cases in issues was filed against Mr. McGee in the Ottawa Municipal Court, No CVF 0500126, in early 2005, by Discover Bank, represented by Thomas & Thomas. The case was transferred to the Ottawa County Court of Common Pleas on March 23, 2005. Mr. McGee filed a counterclaim against Discover Bank in June 2005. Judgment was granted in favor of Discover Bank in the amount of $ 13,601.17 on September 14, 2006. Mr. McGee's counterclaim was dismissed. Garnishment proceedings commenced on May 4, 2007.

Citibank v. McGee, was filed in the Ottawa Municipal Court, Case No. CVF 0500472 in July 2005. The law firm of Javitch, Block, & Rathbone represented Citibank in these proceedings. Mr. McGee filed a counterclaim that exceeded the municipal court's monetary jurisdiction and the case was transferred to the Ottawa County Court of Common Pleas, Case No. 05CVH264, on August 9, 2005. Judgment was entered in favor of Citibank in the amount of $13,083.06 on December 1, 2005. Citibank filed a judgment lien against Mr. McGee on January 26, 2006.

HSBC Bank of Nevada, represented by the law firm of Weltman, Weinberg & Reis, filed an action against Mr. McGee on July 27, 2005. Again, the matter was initiated in the Ottawa

Municipal Court, but was transferred to the Court of Common Pleas when Mr. McGee's counterclaim exceeded the jurisdictional limits of the municipal court. Summary Judgment was granted in favor of HSBC in the amount of $ 6,258.00. Mr. McGee's counterclaim was dismissed.

Mr. McGee filed an action against MBNA as a Petition to Vacate an Arbitration Award Pursuant to Ohio Revised Code § 2711.10, Case No. 05CV275, on August 19, 2005. MBNA, also represented by Javitch, Block, & Rathbone, filed a lawsuit against Mr. McGee in the Ottawa County Court of Common Pleas, Case NO. 05 CVH 384, on November 4, 2005, as an application to confirm and enforce an arbitration award. The court confirmed the award on November 16, 2005. The Petition to Vacate was denied on February 2, 2006 and judgment was entered in favor of MBNA in the amount of $9,529.04. MBNA then began garnishment proceedings.

Citibank, through Javitch, Block, & Rathbone, filed another action against Mr. McGee in 2005 in the Ottawa Municipal Court, Case No. CVF 0500729. It was transferred to the Ottawa County Court of Common Pleas on February 7, 2006 and was assigned Case No. 06CVH068. Mr. McGee filed a counterclaim against Citibank. The court granted judgment in favor of Citibank in the amount of $ 4,383.69. Mr. McGee's counterclaims were dismissed. A judgment lien was filed on October 6, 2006 in the Ottawa County Court of Common Pleas, Case No. 30CJ487.

Mr. McGee contends he was treated unfairly in these state court proceedings. He states that although it may appear that he is asking for review of state court judgments, he claims the judgments were procured by "fraud, deception, accident or mistake." (Compl. at 2.) He contends that this renders them void and subject to collateral attack in federal court under 42 U.S.C.

§1983.

Mr. McGee further claims that Javitch, Block, & Rathbone, Weltman, Weinberg & Reis, Thomas & Thomas, and Wolpoff and Abramson, are all law firms engaged in debt collection activities. He states:

> worthless bundles of commercial paper in the form of charged off debt are sold at auction. The alleged original makers of the loans are not harmed because they hypothecate the loan and risk nothing. Actors, such as Javitch, Block, & Rathbone, Weltman, Weinberg & Reis, Thomas & Thomas, and Wolpoff and Abramson, buy the worthless paper based on geographic location. They invest as little as 75 cents on the face amount and then use coercion, intimidation, and deception to defraud and extort money and property from parties such as Tim McGee.

(Compl. at 4.) He contends Wolpoff and Abramson work with credit card companies to obtain arbitration awards which he terms "phony." He claims the firm attempts to collect the debt, and if they are unsuccessful, they sell it to other law firms like Javitch, Block & Rathbone. He alleges that this law firm then attempts to collect the debt through intimidation, and "sham legal proceedings." (Compl. at 4.) He claims they pretend to be attorneys for the banks and access the debtor's credit report to aid in the collection actions. Mr. McGee contends that Judge Moon "pretend[s] to be completely clueless" and does not make the proper decisions on the cases. (Compl. at 4.). He asserts that these actions entitle him to damages under 42 U.S.C. § 1983, the FDCPA, and RICO. He also seeks rehearing of these cases and judgment in his favor.

## Analysis

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid

4

of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

*Rooker-Feldman*

As an initial matter, this court lacks jurisdiction to consider this case. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999); see, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where

5

federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Coles v. Granville, 448 F.3d 853, 857-59 (6th Cir. 2006). Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

In the present action, despite Mr. McGee's statements to the contrary, he directly attacks the state court judgments against him. All of the allegations in these causes of action concern specific grievances that the law was incorrectly applied to his cases, and are clearly predicated on his belief that the state court was mistaken in rendering its decisions against him. Moreover, plaintiff requests as relief that the state judgments be declared void and their execution enjoined. Any review of the claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

To the extent that Mr. McGee is attempting merely to relitigate these matters anew, he is barred from doing so. A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). The preclusive effect of the previous state court

6

judgments are therefore governed by Ohio law on preclusion. Id. Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. National Amusement, Inc. v. Springdale, 53 Ohio St. 3d 60, 62 (1990). The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. Id. The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. Allen v. McCurry, 449 U.S. 90, 94 (1980). The Ohio courts have already found merit in the claims of the credit cards companies, rejected Mr. McGee's counterclaims and entered judgment against him for the amounts of his credit card debt. This court is bound to give full faith and credit to the decisions of those courts.

*42 U.S.C. § 1983*

Even if the Rooker-Feldman doctrine and the principles of res judicata did not apply in this case, Mr. McGee failed to state a claim for relief under 42 U.S.C. § 1983. To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. With the exception of Judge Moon, none of the defendants are state or local government officials or employees.

A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be

7

characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). There are no allegations in the complaint that reasonably suggest that Javitch, Block & Rathbone, Weltman, Weinberg & Reis, Thomas & Thomas, Wolpoff and Abramson, HSBC Bank, Citibank South Dakota, Citibank Nevada, Discover Bank, MBNA Bank, attorney Victor Javitch, attorney Brian C. Block, attorney Marc Silberman, attorney Scott Russo Miller, attorney James Oh, or attorney Melissa Hager Morris engaged in conduct which could be construed as "state action." Mr. McGee cannot sustain a § 1983 claim against these defendants.

While Judge Moon may be considered to be a state actor, he is not subject to suit. Judicial officers are absolutely immune from damages in civil actions. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. Stump, 435 U.S. at 356-57. Plaintiff alleges no facts to show that either of these criteria has been met in this case.

The determination of whether an action is performed in the defendant's judicial capacity, depends on the "nature" and "function" of the act, not on the act itself. Mireles, 502 U.S.

8

at 13; Stump v. Sparkman, 435 U.S. 349, 362 (1978). Looking first to the "nature" of the act, the court must determine whether it is a function generally performed by a judge. Stump, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges. Mireles, 502 U.S. at 13. Second, an examination of the "function" of the act alleged requires the court to assess whether the parties dealt with the judge in his or her judicial capacity.

Upon applying these principles, it is evident on the face of the pleading that Judge Moon was acting in his capacity as a Judge at all times that the conduct alleged in plaintiff's complaint occurred. The issuance of judicial orders and judgments on civil debt collections matters are all actions normally performed by Common Pleas Court judges. Furthermore, plaintiff dealt with the defendant only in his judicial capacity. Mr. McGee cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. (emphasis added.) When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. Stump, 435 U.S. at 356-57. A judge will be not deprived of immunity because the action he took was performed in error, done maliciously, or was in excess of his authority. Id. Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. King v. Love, 766 F.2d 962, 965 (6th Cir. 1985); see Barnes, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. See Sevier v. Turner,

9

742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the complaint which reasonably suggest that Judge Moon clearly acted outside of the subject matter jurisdiction of the Common Pleas Court. The judges of the Ottawa County Court of Common Pleas have "original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts and appellate jurisdiction from the decisions of boards of county commissioners." OHIO REV. CODE § 2305.01. While Mr. McGee argues that Judge Moon did not make the correct decisions and exceeded his authority under Ohio law, he was acting within the parameters of the subject matter jurisdiction of the Court of Common Pleas. Judge Moon is therefore entitled to absolute immunity from damages in this matter.

Mr. McGee also failed to establish that he was deprived of a constitutional right, the second element of a § 1983 action. He provides a short narrative of facts and then concludes that he is entitled to relief under 42 U.S.C. § 1983. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most

successful strategies for a party." Id. at 1278. Moreover, Mr. McGee's failure to identify a particular constitutional claim in his complaint places an unfair burden on the defendants to speculate on the potential causes of action that he may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state the federal constitutional claim or claims upon which plaintiff intends to base his § 1983 action.

Finally, even if Mr. McGee could overcome the bars presented by the Rooker-Feldman Doctrine, the doctrine of res judicata, and his failure to establish any of the elements of a cause of action under 42 U.S.C. §1983, his claim under this statute would be time barred. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. LRL Properties v. Portage Metro Housing Authority, 55 F. 3d 1097 (6th Cir. 1995). The actions which gave rise to this complaint took place between 2005 and 2006. This action was filed on December 2, 2009, well beyond the expiration of the two-year statute of limitations period. There would be no purpose in allowing this matter to go forward in view of the fact that it is clearly time-barred. See Fraley v. Ohio Gallia County, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming sua sponte dismissal of pro se §1983 action filed after two year statute of limitations for bringing such an action had expired).

*Fair Debt Collection Practices Act*

Mr. McGee's claim under the FDCA is also time barred. An action to enforce liability under this statute must be brought within one year from the date on which the violation occurs. Mr. McGee alleges that the defendants engaged in debt collection practices in 2005 and 2006. This action brought in 2009. Again, it is well beyond the expiration of the statute of

limitations period.

*RICO*

Finally, Mr. McGee fails to state a claim for relief under RICO. Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

A "pattern of racketeering activity" requires at least two acts of "racketeering activity" which are set forth in Section 1961(1).[1] 18 U.S.C. § 1961(5). To prove a defendant violated Section 1962(c),

---

[1] 18 U.S.C. § 1961(1) defines a "racketeering activity" as: (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: §201 (bribery),§ 224 (sports bribery), §§471, 472, and 473 (counterfeiting), §659 (theft from interstate shipment),§664 (embezzlement from pension and welfare funds), §891-894 (extortionate credit transactions), §1028 (fraud and in connection with identification documents), §1029 (fraud in connection with access devices), §1084 (transmission of gambling information), §1341 (mail fraud), §1343 (wire fraud), §1344 (financial institution fraud), §1425 (unlawful procurement of citizenship or nationalization), §1426 (reproduction of naturalization or citizenship papers), §1427 (sale of naturalization or citizenship papers),§ 1461-1465 (obscene matter), §1503 (obstruction of justice), §1510 (obstruction of criminal investigations), §1511 (obstruction of State or local law enforcement), §1512 (tampering with a witness, victim, or an informant), §1513 (retaliating against a witness, victim, or an informant), §1542 (false statement in application and use of passport), §1543 (forgery or false use of passport),§1544 (misuse of passport), §1546 (fraud and misuse of visas,), §§1581-1591 (slavery, and trafficking in persons), §1951 (interference with commerce, robbery, or extortion), §1952

it is necessary for the plaintiff to prove the defendant committed two predicate offenses. To violate Section 1962(d), a defendant must conspire with another person who commits two acts of racketeering activity. *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986).  Mr McGee indicates that the defendants sold or purchased interests in accounts receivables.  None of these actions constitute "racketeering activity" as defined by the statute.  Although Mr. McGee attempts to build a claim by using terms like "fraud" and "extortion" to describe these actions, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet the pleading requirements of Federal Civil Procedure Rule 8.  Ashcroft v. Iqbal , 129 S.Ct. 1937, 1949 (2009).

Moreover, while this case involves the collection of an alleged debt, it does not

---

(racketeering), §1953 (interstate transportation of wagering paraphernalia), §1954 (unlawful welfare fund payments), §1955 (illegal gambling businesses), §1956 (money laundering), §1957 (engaging in monetary transactions in property derived from specified unlawful activity), §1958 (use of interstate commerce in the commission of murder-for-hire), §§2251, 2251A, 2252, and 2260 (sexual exploitation of children), §§ 2312 and 2313 (interstate transportation of stolen motor vehicles), §§2314 and 2315 interstate transportation of stolen property), §2318 (trafficking in counterfeit labels for phonorecords, computer programs and motion pictures), §2319 (criminal infringement of a copyright), §2319A (unauthorized trafficking in sound recordings and music videos), §2320 (trafficking in goods or services bearing counterfeit marks), §2321 (trafficking in certain motor vehicles or motor vehicle parts), §§2341-2346 (trafficking in contraband cigarettes), §§2421-24 (slave traffic), (C) any act which is indictable under title 29, United States Code, §186 (restrictions on payments and loans to labor organizations) or §501(c) (embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under §157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in §102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, § 274 (bringing in and harboring certain aliens), § 277 (aiding or assisting certain aliens to enter the United States), or §278 (importation of alien for immoral purpose) if the act indictable under such of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in §2332b(g)(5)(B).

13

involve the "collection of an unlawful debt." 18 U.S.C. § 1962. Under RICO, "unlawful debt" is narrowly defined as a debt incurred or contracted in illegal gambling activity or debt unenforceable because the interest rate is at least twice the enforceable rate allowed by federal or state usury laws. 18 U.S.C. § 1961(6). There is no indication in the complaint that plaintiff's credit card debt falls into one of these two categories. His RICO claim cannot be based on practices to collect an unlawful debt.

## Conclusion

Accordingly, this action is dismissed. Further, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ David A. Katz

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a) provides, in pertinent part:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.